**Joseph TAMBERELLA, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**Docket No. 04–2593AG.**

United States Court of Appeals, Second Circuit.

July 14, 2005.

James A. Cohen (Elizabeth A. Maresca and Jenna Z. Nicenko, on the brief), Lincoln Square Legal Services, Inc., New York, NY, for Petitioner–Appellant.

Eileen J. O'Connor, Assistant Attorney General (Frank P. Cihlar and Marion E.M. Erickson, Attorneys, on the brief), Tax Division, U.S. Department of Justice, Washington, DC, for Respondent–Appellee.

Present: CARDAMONE, KATZMANN, Circuit Judges. and KRAVITZ, District Judge.[*]

## SUMMARY ORDER

Petitioner-appellant Joseph Tamberella appeals a March 5, 2004 decision and Memorandum Opinion of the United States Tax Court, which concluded that a $89,840 payment to Tamberella from his former employer, ATC–Vancom of Nevada Limited Partnership, Inc. (ATC), pursuant to a settlement agreement, was not excludable from gross income because it was not received on account of personal physical injuries or physical sickness. In addition, the Tax Court concluded that Tamberalla was liable for penalties pursuant to 26 U.S.C. §§ 6651(a)(1) and 6662 for the late filing of his tax return and for the negligent underpayment of taxes, respectively. We assume the parties' familiarity with the underlying facts and procedural history of the case. For the reasons that follow, we affirm.

▇ Tamberella argues that the Tax Court erroneously concluded that the $89,840 settlement payment was not ex-

cludable from gross income. Rather, Tamberella contends, the entire $89,840 portion of the settlement award is excludable from gross income because it represents compensation for personal physical injuries and physical sickness triggered by ATC's conduct; specifically, it represents compensation for Tamberella's hypertension, schizophrenia, and bipolar disorder. We disagree.

Section 61(a) of the Internal Revenue Code defines "gross income" broadly as "all income from whatever source derived." 26 U.S.C. § 61(a) (2000). However, amounts received as damages, by suit or settlement, "on account of personal physical injuries or physical sickness" are excludable from "gross income." *Id.* § 104(a)(2). It is well established that "gross income" is to be broadly construed, while exclusions from income are to be narrowly construed. *See Comm'r v. Schleier,* 515 U.S. 323, 328, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995); *see also United States v. Burke,* 504 U.S. 229, 248, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (Souter, J., concurring in the judgment); *Taggi v. United States,* 35 F.3d 93, 95 (2d Cir.1994).

Two independent requirements must be met before proceeds from a settlement may be excluded under section 104(a)(2). "First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is based upon tort or tort type rights." *Schleier,* 515 U.S. at 337 (internal quotation marks omitted); *see* 26 C.F.R. § 1.104–1(c). Second, the taxpayer must show that the damages were received on account of personal physical injuries or physical sickness. *Schleier,* 515 U.S. at 337 (internal quotation marks omitted);[1] *see* 26 U.S.C. 104(a)(2).

---

[*] The Honorable Mark R. Kravitz, Judge of the United States District Court for the District of Connecticut, sitting by designation.

[1] On August 20, 1996, section 104(a)(2) was amended for damages received after that date, and as amended, it requires the compensated personal injuries or sickness be "physi-

Whether a settlement payment is excludable turns on the intent of the payor in making the payment, which is a factual inquiry that we review for clear error. *See Agar v. Comm'r*, 290 F.2d 283, 284 (2d Cir.1961) (per curiam) ("[T]he ultimate inquiry is into the 'basic reason' for the company's payment."); *Madison Recycling Assoc. v. Comm'r*, 295 F.3d 280, 285 (2d Cir.2002). In undertaking this analysis, courts may focus on the nature of the claim underlying the award of damages, rather than on the validity of the claim. *See Burke*, 504 U.S. at 237; *see also Pipitone v. United States*, 180 F.3d 859, 862 (7th Cir.1999); *Robinson v. Comm'r*, 102 T.C. 116, 126, 1994 WL 26303 (1994). Where the express language of the settlement agreement indicates the nature of the underlying claim being settled and allocates the award among various claims, then the terms of the agreement are generally binding for tax purposes. *See Robinson*, 102 T.C. at 127; *see also Pipitone*, 180 F.3d at 863–64. However, when the settlement agreement does not expressly indicate the nature of the claims to be settled, as in the present case, we look to all the facts and circumstances to discern the payor's intent. *See Robinson*, 102 T.C. at 127; *see also Pipitone*, 180 F.3d at 864–65.

Tamberella's argument must fail because the Tax Court's factual determination that he did not receive the $89,840 settlement payment on account of personal physical injuries or physical sickness is not clearly erroneous. The Tax Court relied on the letter ATC's counsel sent to Tamberella, which recounted Tamberella's settlement offer. The letter explained that Tamberella wanted $45,000 compensation for back wages and additionally sought reinstatement, but that in lieu of reinstatement, Tamberella was willing to accept an additional payment for a total award of $150,000. Tamberella ultimately received only $115,000, and the settlement agreement specifically stated that the portion not at issue here was to compensate Tamberella for lost back wages. The Tax Court consequently concluded that the $89,840 balance constituted compensation paid to Tamberella to waive his right to seek reinstatement of employment, as well as an earlier rejected arbitrator's award, and was therefore not on account of personal physical injuries or physical sickness. Based on the record viewed in its entirety, we cannot conclude that the Tax Court's conclusion that the settlement award was not on account of personal physical injuries or physical sickness is clearly erroneous, and accordingly Tamberella necessarily cannot establish that the damages are excludable from gross income.[2]

---

cal." *See* Small Business Job Protection Act of 1996, Pub.L. No. 104–188, § 1605, 110 Stat. 1755, 1838–39 (1996).

**2.** In reaching this conclusion, we believe it is necessary to make three observations. First, we note that the arbitrator's award indicates that it was to compensate Tamberella for *"tortious"* discharge." If we assume, *arguendo*, that the arbitrator correctly concluded that Tamberella's discharge was "tortious," then, depending on whether the arbitrator's award additionally was on account of personal physical injuries or physical sickness, the award may have been excludable from gross income. *See Schleier*, 515 U.S. at 337; 26 U.S.C.

104(a)(2). However, we note that Tamberella never made this argument. Indeed, in arguing that *all* of the $89,840 portion of the settlement award was excludable, rather than just part of it, Tamberella specifically argued that the Tax Court's conclusion that the $89,840 portion of the settlement award represented the arbitration award, as well as waiver of the right to seek reinstatement, was entirely in error. Consequently, we do not consider further whether some portion of the $89,840 is excludable.

Second, we note that in deciding, based on the record presented, that Tamberella's award for waiver for the right to seek reinstatement

■ Tamberella additionally argues that the Tax Court erroneously imposed penalties pursuant to 26 U.S.C. § 6651(a)(1) for the late filing of his tax return. A taxpayer who fails to timely file a tax return is liable for a mandatory penalty under 26 U.S.C. § 6651(a)(1) unless the taxpayer can show that there was "reasonable cause" for the late filing and it was not due to "willful neglect." 26 U.S.C. § 6651(a)(1). Tamberella contends that there was reasonable cause for the late filing of his tax return because he was suffering "from severe mental incapacity." We disagree.

"Whether a factor constitutes 'reasonable cause' for late filing under § 6651(a)(1) is reviewed de novo." Marrin v. Comm'r, 147 F.3d 147 (2d Cir.1998). In Marrin v. Commissioner, this Court declined to find "reasonable cause" where, inter alia, the taxpayer's claim that he was "incapacitated" was undermined by his continuous engagement in securities and futures transactions. 147 F.3d at 153. The same conclusion is warranted here where, throughout the relevant period, Tamberella was able to manage his personal affairs and even represented himself in a lawsuit he brought against his former employer for denied unemployment benefits, and prepared a petition for writ of certiorari to the Supreme Court. Tamberella's claim that his mental illness constituted reasonable cause therefore must be rejected, and the penalty imposed for late filing upheld.

■ Tamberella also argues that the Tax Court erroneously imposed penalties pursuant to 26 U.S.C. § 6662 for the negligent underpayment of taxes. Section 6662 of the Internal Revenue Code imposes a 20 percent penalty on the portion of any underpayment of tax which is attributable to negligence or disregard of the rules and regulations; however, where a taxpayer acted with good faith and "reasonable cause" exists for the underpayment, no payment will be imposed. 26 U.S.C. §§ 6662(a), (b)(1) and 6664(c). Tamberella again contends that his mental illness constituted "reasonable cause," and that he had a good faith belief that the settlement award was excludable from gross income. We, again, disagree. Even if we assume, arguendo, that Tamberella acted in good faith, he cannot establish that there was reasonable cause for the underpayment due to his mental illness for the reasons discussed, supra—Tamberella was able to manage his personal affairs, thus undermining any claim that he was incapacitated by his mental illness. In addition, while the settlement agreement specifically put Tamberella on notice that some or all of the $89,840 might be taxable, he did not seek the advice of a tax professional. Tamberella therefore failed to make any "reasonable attempt" to comply with the tax code, see id. § 6664(c), and his failure to report the $89,840 as income was consequently the result of negligence. Thus, we conclude that the Tax Court properly imposed a penalty under 26 U.S.C. § 6662.

Finally, Tamberella argues that the district court improperly excluded the report and testimony of Tamberella's proposed expert. We disagree.

did not represent damages received on account of personal physical injuries or physical sickness, we express no opinion as to whether upon a different record, such an award (in whole or in part) could represent compensation for personal physical injuries or physical sickness insofar as it represents compensation for a diminution of future income and increased medical costs resulting from injury or sickness.

Third, and finally, we expressly do not decide whether a serious mental illness, such as schizophrenia or bipolar disorder, constitutes a "physical" injury or sickness within the meaning of 26 U.S.C. § 104(a)(2).

We review the Tax Court's application of its own rules, as well as its decision to admit or exclude expert testimony, for abuse of discretion. *Sunik v. Comm'r*, 321 F.3d 335, 337 (2d Cir.2003); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 264 (2d Cir.2002). Tax Court Rule 143 provides, in pertinent part:

> After the case is calendared for trial or assigned to a Judge or Special Trial Judge, each party who calls any expert witness shall serve on each other party, and shall submit to the Court, not later than 30 days before the call of the trial calendar on which the case shall appear, a copy of all expert witness reports prepared.... An expert witness's testimony will be excluded altogether for failure to comply with the provisions of this paragraph, unless the failure is shown to be due to good cause and unless the failure does not unduly prejudice the opposing party, such as by significantly impairing the opposing party's ability to cross-examine the expert witness or by denying the opposing party the reasonable opportunity to obtain evidence in rebuttal to the expert witness's testimony.

Tax Ct. R. 143(f). The trial date was set for April 15, 2003. The calendar call for the trial was on April 7, 2003. Therefore, Tamberella was required to serve on the Commissioner and submit to the court Loretta Carle's expert report by March 8, 2003, 30 days before the April 7 calendar call. However, the expert report was not submitted to the Tax Court and served on the Commissioner until March 14, 2003, and therefore, Tamberella failed to comply with the 30–day time limit set by Rule 143. Consequently, the expert's testimony was excludable unless Tamberella can show (1) good cause, and (2) no undue prejudice to the Commissioner.

█ In this case, the Tax Court did not abuse its discretion when it excluded the report and the proposed testimony because Tamberella cannot establish that there was "good cause" for the untimely submission of the proposed expert report. At the hearing, the only reason Tamberella's counsel offered for the untimely expert report was that engaging an expert is time consuming.[3] And on appeal, Tamberella's counsel contends that "[p]reparation of an expert report is time consuming." What Tamberella fails to appreciate is that a mere claim that trial preparation is "time consuming" has no limits; such an argument could be made in virtually every case and if accepted as "good cause," then virtually every litigant could establish "good cause" for failing to comply with the courts' rules of procedures. The result would be a significant inefficiency in the administration of justice. This cannot be the intended outcome, and therefore such an argument cannot constitute "good cause." Thus, the Tax Court did not abuse its discretion in excluding Tamberella's expert report and testimony.

For the foregoing reasons, the decision of the Tax Court is **AFFIRMED**.

---

**3.** Tamberella's counsel maintained, "You need time to prepare an expert report. You need time to meet with your client, understand the issues, determine if you need an expert report. You need time to engage an expert. The expert needs time to meet with the taxpayer, analyze the taxpayer and formulate a report."