T.C. Memo. 2007-224

UNITED STATES TAX COURT

DOUGLAS A. GIBSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13125-05.                    Filed August 13, 2007.

<u>Dwight M. Montgomery</u>, for petitioner.

<u>Laura A. McKenna</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a $49,778 deficiency
in petitioner's 2002 Federal income tax and a $9,956 section 6662

penalty for 2002.[1]  After a concession,[2] the issues remaining for decision are (1) whether $175,000 petitioner received during 2002 in connection with a settlement of a lawsuit is excludable from gross income pursuant to section 104(a)(2), and (2) whether petitioner is liable for an accuracy-related penalty pursuant to section 6662.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time he filed the petition, petitioner resided in Sun City, California.

In 1991, petitioner's wife inherited a home in Sun City, California (the Sun City residence), in the County of Riverside (the county).  In late 1991, petitioner, his wife, and their children (the Gibsons) moved into the Sun City residence.

The Sun City residence was in an area zoned as a "Senior Citizen Development" (SCD) by the county.  A county ordinance provided that an SCD zoning restriction placed a certain age-related residency restriction (the restriction) on persons

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  Petitioner conceded that the Social Security benefits he received during 2002 are taxable.

occupying dwelling units within the SCD.  The Gibsons did not satisfy the restriction.

In 1992, the Sun City Civic Association reported the Gibsons' restriction violation to county code enforcement authorities (CCE authorities).  The CCE authorities contacted the Gibsons several times with regard to the restriction.  On the first occasion, CCE authorities served notice on the Gibsons informing them of the restriction and that they were in violation of the restriction.  Later, CCE authorities issued the Gibsons a citation stating that they should comply immediately with the restriction by restricting the occupancy of the home to persons satisfying the restriction.  CCE authorities advised the Gibsons that continued violation of the restriction might result in fines and imprisonment.  Also, CCE authorities issued petitioner a notice to appear in court, alleging a criminal violation of the ordinance that imposed the restriction.  The county later dropped the charge, and petitioner did not have to appear in court.

Other Sun City residents harassed and physically and verbally threatened the Gibsons because of their violation of the restriction.

In May 1994, the Gibsons and other plaintiffs initiated a class action lawsuit against the county and certain other county officials in the U.S. District Court for the Central District of California.  In the class's first amended complaint, the class

set forth 14 claims: (1) Violation of the Federal Fair Housing Act; (2) violation of the California Fair Employment and Housing Act; (3) violation of the Unruh Civil Rights Act; (4) violation of Federal substantive due process; (5) violation of California substantive due process; (6) violation of Federal equal protection laws; (7) violation of California equal protection laws; (8) violation of California procedural due process; (9) violation of California privacy laws; (10) violation of Federal freedom of association laws; (11) violation of California freedom of association laws; (12) California inverse condemnation; (13) California estoppel by nonconforming use rights; and (14) California estoppel by exceeding zoning authority. The plaintiff class incorporated into each of the above-referenced claims between 38 and 44 paragraphs of additional material. Paragraph 35 of that additional material alleged bodily injury among nine other losses suffered by petitioner and members of petitioner's class.

Paragraph 35 states:

By reason of defendant's unlawful acts or practices, plaintiffs and members of plaintiff class have suffered loss of housing, violation of their civil rights, monetary damages, humiliation, and bodily injury, including but not limited to physical and emotional distress. Plaintiffs and members of the plaintiff class have also suffered the loss of the important social, business, economic, and political benefits of associations that arise from living in communities integrated with families and children.

In August 2002, the District Court entered a consent decree in petitioner's class action lawsuit. The consent decree granted declaratory, injunctive, and monetary relief to petitioner and the other named plaintiffs. Petitioner, his wife's estate,[3] and his children received a total of $350,000 in monetary relief, to be allocated as agreed among them. The consent decree also established a fund for the purpose of making distributions to unnamed plaintiffs who submitted qualified claims.

Pursuant to the decree, six factors are to be considered in determining the amount of compensation due to unnamed qualified claimants. Those six factors are: (1) The number of citations or threats received; (2) the degree of coercion expressed in the citation or threat or other communication from the county to the claimant; (3) whether the claimant left the dwelling in question because of the citation or threat; (4) the nature and degree of emotional distress suffered, including whether the claimant provided evidence of any physical symptoms of emotional distress, or other special circumstances which increased the emotional distress; (5) whether the claimant provided evidence of any increased costs resulting from the loss of housing, including, but not limited to, increased cost of alternative housing, wages and other income lost during the time spent looking for

---

[3] Petitioner's wife died in 2000, and her estate was substituted as a party in the class action lawsuit.

alternative housing, moving, storage or packing costs, temporary housing costs, any costs of commuting to and from work in excess of those that would have been incurred commuting to and from the denied housing; and (6) whether the claimant provided evidence of any other compensable loss.

Petitioner received $175,000 of the $350,000 awarded to him, his wife's estate, and his children. Petitioner engaged an experienced tax attorney who met with the class action attorneys to obtain all the pertinent facts and circumstances. After reviewing the information, the tax attorney advised petitioner to report $12,500 of the $175,000 as "other income" and to label it "damages" on petitioner's 2002 Form 1040, U.S. Individual Income Tax Return. Petitioner took his tax attorney's advice and reported on his 2002 return $12,500 of the $175,000 in damages he received.

In the notice of deficiency, respondent determined that the entire amount of the settlement was includable in petitioner's gross income. Additionally, respondent determined an accuracy-related penalty of $9,956 related to petitioner's failure to report $162,500 of the settlement proceeds.

OPINION

I.  Deficiency

   A.  Burden of Proof

The Commissioner's determinations generally are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Durando v. United States, 70 F.3d 548, 550 (9th Cir. 1995).  The U.S. Court of Appeals for the Ninth Circuit, to which an appeal of this case would lie, has held that in order for the presumption of correctness to attach to the notice of deficiency in unreported income cases,[4] the Commissioner must establish "some evidentiary foundation" linking the taxpayer to the income-producing activity, Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), revg. 67 T.C. 672 (1977), or "demonstrating that the taxpayer received unreported income", Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982); see also Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985).  Once there is evidence of actual receipt of funds by the taxpayer, the taxpayer has the burden of proving that all or part of those funds are not taxable.  Tokarski v.

_____

   [4]  Although Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), was an unreported income case regarding illegal source income, the U.S. Court of Appeals for the Ninth Circuit applies the Weimerskirch rule in all cases involving the receipt of unreported income.  See Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982); Petzoldt v. Commissioner, 92 T.C. 661, 689 (1989).

<u>Commissioner</u>, 87 T.C. 74 (1986). Accordingly, petitioner bears the burden of proof.[5] See Rule 142(a).

B. <u>Section 104</u>

It is well established that, pursuant to section 61(a), gross income includes all income from whatever source derived unless otherwise excluded by the Internal Revenue Code. See <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426, 429-431 (1955). Exclusions from gross income are construed narrowly. <u>Commissioner v. Schleier</u>, 515 U.S. 323, 327-328 (1995).

As relevant here, section 104 provides:

SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS.

(a) In General.--Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include--

*   *   *   *   *   *   *

(2) the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness;

*   *   *   *   *   *   *

---

[5] For the first time, in the opening brief petitioner raises the issue of respondent's bearing the burden of proof pursuant to sec. 7491(a), as amended. Generally, we will not consider an issue that is raised for the first time on brief. See <u>Foil v. Commissioner</u>, 92 T.C. 376, 418 (1989), affd. 920 F.2d 1196 (5th Cir. 1990); <u>Markwardt v. Commissioner</u>, 64 T.C. 989, 997 (1975).

* * * For purposes of paragraph (2), emotional distress
shall not be treated as a physical injury or physical
sickness. * * *[6]

"Damages received" mean amounts received "through
prosecution of a legal suit or action based upon tort or tort
type rights, or through a settlement agreement entered into in
lieu of such prosecution."  Sec. 1.104-1(c), Income Tax Regs.  In
evaluating whether amounts received pursuant to a settlement
agreement are excludable from income pursuant to section
104(a)(2), we look to the written terms of the settlement
agreement to determine the origin and allocation of the
settlement proceeds.  See Metzger v. Commissioner, 88 T.C. 834
(1987), affd. without published opinion 845 F.2d 1013 (3d Cir.
1988); Jacobs v. Commissioner, T.C. Memo. 2000-59, affd. sub nom.
Connelly v. Commissioner, 22 Fed. Appx. 967 (10th Cir. 2001).

Petitioner settled his claims against the county.  The
parties entered into a settlement agreement via a consent decree
entered by the District Court.  In that consent decree, the
District Court granted petitioner declaratory, injunctive, and
monetary relief.  Petitioner received $175,000 of the $350,000
awarded to the Gibsons pursuant to the consent decree.  The

_____

[6] Section 104 was amended by the Small Business Job
Protection Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat.
1838 to provide, effective for amounts received after August 20,
1996, that the personal injury or sickness for which the damages
are received must be physical.

District Court did not allocate the proceeds among petitioner's claims.

If a settlement agreement lacks express language stating what the settlement amount was paid to settle, we look to the intent of the payor, on the basis of all the facts and circumstances of the case, including the complaint filed and details surrounding the litigation. United States v. Burke, 504 U.S. 229 (1992); Robinson v. Commissioner, 102 T.C. 116, 127 (1994) affd. in part and revd. in part on another issue 70 F.3d 34 (5th. Cir 1995); Knuckles v. Commissioner, T.C. Memo. 1964-33, affd. 349 F.2d 610 (10th Cir. 1965). A key question to ask is "'In lieu of what were the damages awarded?'" Robinson v. Commissioner, supra at 126 (quoting Raytheon Prod. Corp. v. Commissioner, 144 F.2d 110, 113 (1st Cir. 1944), affg. 1 T.C. 952 (1943). Accordingly, the Court must determine the intent of the payor upon the basis of the facts and circumstances including petitioner's complaint in the class action lawsuit.

Petitioner argues that the first amended complaint includes a cause of action and remedy for bodily injury and physical distress. Petitioner testified that he was verbally and physically harassed by other residents of Sun City. According to petitioner, this harassment and the stress of the lawsuit caused him to suffer numerous headaches, stomach aches, and breathing

problems.  Petitioner testified that he visited a doctor for both stomach aches and breathing problems.

Petitioner failed to show how the county or any of the individuals involved in the class action lawsuit caused his alleged personal physical injury or physical sickness. Additionally, petitioner failed to produce any documentary evidence from his alleged doctor visits.  If a party fails to introduce evidence within that party's possession, we may presume in some circumstances that, if produced, the evidence would be unfavorable to that party.  Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).  This is true where the party that does not produce the evidence has the burden of proof or the other party has established a prima facie case.  Id.  Furthermore, we have previously held that stomach problems and headaches such as those suffered by petitioner are symptoms of emotional distress.  See Hawkins v. Commissioner, T.C. Memo. 2005-149 (explaining that emotional distress includes symptoms such as headaches and stomach disorders).  Petitioner produced no receipts, prescriptions, or other evidence to corroborate his testimony of his alleged breathing problems.  We are not required to, and do not, accept petitioner's self-serving testimony regarding his alleged personal physical injuries or physical sickness without corroborating evidence.  See Geiger v. Commissioner, 440 F.2d

688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Lerch v. Commissioner, T.C. Memo. 1987-295, affd. 877 F.2d 624 (7th Cir. 1989).

Petitioner argues that because the consent decree entered in the class action lawsuit provided payments for physical injuries and physical sickness, some share of petitioner's settlement proceeds consist of damages received on account of personal physical injury or physical sickness. Petitioner argues that because he was a named member of the certified plaintiff class, his claims are typical of the claims of the plaintiff class. Petitioner argues that since unnamed plaintiffs must satisfy one of the six factors set forth in the consent decree (discussed supra) to qualify for compensation, petitioner must also satisfy at least one of the six factors. Petitioner claims that the only factor he satisfies is "whether claimant provided evidence of any other compensable loss." Petitioner contends that this demonstrates that he sustained physical injury and physical sickness.

We reject this argument. The six factors referred to by petitioner are relevant to determining the amount of compensation due to unnamed claimants. Assuming arguendo that we accept petitioner's self-serving and uncorroborated testimony, it appears that petitioner qualified for at least three of the six factors cited, none of which consists of personal physical

injuries or physical sickness.[7]  Additionally, factor six, for which petitioner claims he qualifies, refers to "any other compensable loss" and does not necessarily include personal physical injury and physical sickness.

Apart from petitioner's self-serving and uncorroborated testimony, the record does not establish that petitioner received a portion of his $175,000 total settlement proceeds on account of personal physical injury or physical sickness.  Accordingly, we sustain respondent's determination that the settlement proceeds petitioner received in 2002 are includable in his gross income. See Geiger v. Commissioner, supra; Lerch v. Commissioner, supra.

## II.  Accuracy-Related Penalty

### A.  Section 6662(a) Penalty

Respondent determined an accuracy-related penalty under section 6662(a) of $9,956.  Respondent determined that the entire underpayment of tax for 2002 was attributable to negligence or disregard of rules or regulations, and/or a substantial understatement of income tax.

Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20 percent of the portion of an underpayment of tax

---

[7] Petitioner qualified for factor 1 because he received a citation.  He qualified for factor 2 because the CCE authorities told the Gibsons they would have to move.  Also, the citation threatened fines and imprisonment.  Additionally, petitioner was served with a notice to appear in court to face possible criminal charges.  He qualified for factor 4 because of the emotional distress he suffered.

(1) due to negligence or disregard of rules or regulations, or (2) attributable to any substantial understatement of income tax. Sec. 6662(b). The term "understatement" means the excess of the amount of tax required to be shown on a return over the amount of tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)). Sec. 6662(d)(2)(A). Generally, an understatement is a "substantial understatement" when the understatement exceeds the greater of $5,000 or 10 percent of the amount of tax required to be shown on the return. Sec. 6662(d)(1)(A). The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Internal Revenue Code and any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1, 12 (1989), affd. 925 F.2d 348, 353 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985). The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

B. Burden of Production

The Commissioner has the burden of production with respect to the accuracy-related penalty. Sec. 7491(c). To meet this burden, the Commissioner must produce sufficient evidence

indicating that it is appropriate to impose the penalty.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner meets this burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect.  Rule 142(a); see Higbee v. Commissioner, supra.  The taxpayer may meet this burden by proving that he or she acted with reasonable cause and in good faith.  See sec. 6664(c)(1); see also Higbee v. Commissioner, supra; sec. 1.6664-4(b)(1), Income Tax Regs.

C.  Analysis

Respondent met his burden of production pursuant to section 7491(c).  Petitioner's 2002 income tax return contains an understatement of income tax greater than $5,000.  See sec. 6662(d)(1)(A)(ii).  Accordingly, petitioner bears the burden of proving that the accuracy-related penalty should not be imposed with respect to any portion of the underpayment for which he acted with reasonable cause and in good faith.  See sec. 6664(c)(1); Higbee v. Commissioner, supra at 446.  Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and good faith reliance on the advice of a professional.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner has no relevant tax education, sophistication, or business experience.  Petitioner engaged an experienced tax

attorney to determine the proper tax treatment of petitioner's settlement award.  After discussing the relevant facts and circumstances of the class action lawsuit with the class action attorneys, the tax attorney advised petitioner to report $12,500 of the $175,000 settlement as taxable income.  On the basis of that advice, petitioner reported $12,500 on his 2002 tax return. Accordingly, petitioner is not liable for the accuracy-related penalty.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and, to the extent not mentioned above, we conclude they are irrelevant or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.