T.C. Memo. 2012-190

UNITED STATES TAX COURT

M. BLACKWOOD AND J. WEIKLE BLACKWOOD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23530-10.                           Filed July 11, 2012.

<u>Michael D. Weikle</u>, for petitioners.

<u>Diana N. Wells</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined a $34,970 deficiency in petitioners'

2008 Federal income tax and a $6,994 accuracy-related penalty under section

6662(a).[1]  After concessions by the parties,[2] the issues for decision are:  (1) whether

the $100,000 settlement payment received by Julie W. Blackwood (petitioner)

during 2008 is excludable from gross income under section 104(a)(2); (2) whether a

portion of the $100,000 settlement is excludable from gross income under the flush

language of section 104(a); and (3) whether petitioners are liable for an accuracy-

related penalty under section 6662(a) for substantial understatement of income tax.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of

facts and the attached exhibits are incorporated herein by this reference.

At the time the petition was filed, petitioners resided in West Virginia.

Before January 3, 2008, petitioner worked for Siemens as a trainer assigned

to Siemens' client, the Charleston Area Medical Center (hospital).  Petitioner's job

duties included training hospital personnel in the use of a Siemens-developed

computer program for the collection of patient information at the time of the

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioners concede they failed to report $11 of interest income for 2008. Respondent concedes petitioners are not liable for the self-employment tax for 2008.

patient's admission to the hospital. The information collected by the Siemens system would then be used by other medical personnel when making decisions regarding the patient's subsequent medical care at the hospital. The Siemens system required hospital personnel to consult with the patient and simultaneously enter the patient's responses to prompted questions.

Following the admission of her son to the hospital in December 2007, petitioner observed the hospital nurse taking her son's medical history without using the Siemens data entry program. Having trained hospital personnel in the use of the Siemens program, petitioner was immediately aware that the hospital nurse failed to ask all the questions required by the program.

Following the release of her son from the hospital, petitioner used her Siemens access to view her son's electronically stored medical records. Upon review petitioner learned that the hospital nurse had input information regarding questions she failed to ask petitioner's son during the admissions process. Petitioner reported her observation of the hospital nurse's use of the Siemens system to her superiors at work and requested guidance as to how to report the hospital nurse's actions. Petitioner's supervisor informed her that petitioner would be advised of the action she should take upon returning to work from a previously scheduled vacation. Upon returning to work on January 3, 2008, petitioner was

informed that her employment had been terminated by Siemens because she had accessed her son's hospital medical records without permission and in violation of the Health Insurance Portability and Accountability Act (HIPAA).

Before January 3, 2008, petitioner suffered from depression. As a result of her termination, petitioner's depression relapsed, causing her to suffer symptoms such as insomnia, sleeping too much, migraines, nausea, vomiting, weight gain, acne, and pain in her back, shoulder and neck. Petitioner resumed counseling sessions with her counselor, D. Lynn Lewis, who has a master of arts degree and is a licensed professional counselor and a licensed clinical social worker.

Petitioner requested that her counsel, Michael D. Weikle, present her claim of wrongful termination to Siemens. Michael D. Weikle is petitioner's father. Petitioner's counsel advised Siemens' counsel of petitioner's intent to file a claim for wrongful termination by sending to Siemens' counsel a copy of his draft complaint for their review. On August 21, 2008, petitioner signed a confidential settlement agreement and general release (settlement agreement) in which Siemens agreed to pay petitioner $100,000 for "alleged damages for illness and medical expenses allegedly exacerbated by, and allegedly otherwise attributable to, * * * [petitioner's] alleged wrongful discharge".

The settlement agreement states that petitioner "agrees that she is responsible for all applicable taxes, if any, as a result of the receipt of these monies." Petitioner was issued a Form 1099-MISC, Miscellaneous Income, reporting the $100,000 Siemens paid to her in 2008. On advice of counsel, petitioners did not report the $100,000 as income on their joint Federal income tax return for 2008, nor did they disclose on the return that they considered the settlement payment to be nontaxable.

On July 26, 2010, respondent issued to petitioners a notice of deficiency for 2008. Petitioners timely filed a petition disputing the determinations in the notice of deficiency.

## OPINION

Respondent's determinations in the notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners argue, for the first time on brief, that respondent bears the burden of proof pursuant to section 7491(a) for the issue of Siemens' intent with respect to the $100,000 settlement payment.[3] Our conclusions, however, are based on a preponderance

---

[3]"This Court generally will not consider issues that are raised for the first time on brief, particularly where the belated claim would prejudice a party." Han

(continued...)

of the evidence, and thus the allocation of the burden of proof is immaterial.  See

McGowen v. Commissioner, T.C. Memo. 2011-186, 2011 Tax Ct. Memo LEXIS

185, at *5-6 n.3; Tamberella v. Commissioner, T.C. Memo. 2004-47, 2004 Tax Ct.

Memo LEXIS 47, at *4, aff'd, 139 Fed. Appx. 319 (2d Cir. 2005).

Section 104(a)(2) Exclusion From Income

Section 61(a) generally provides:  "gross income means all income from

whatever source derived" unless excluded by a specific provision of the Code.

This section is construed broadly, whereas exclusions from gross income are

construed narrowly.  Commissioner v. Schleier, 515 U.S. 323, 327-328 (1995);

Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955).  Section

104(a)(2) provides an exclusion from gross income for "the amount of any

damages (other than punitive damages) received (whether by suit or agreement

and whether as lump sums or as periodic payments) on account of personal

---

[3](...continued)
v. Commissioner, T.C. Memo. 2002-148, 2002 Tax Ct. Memo LEXIS 155, at *111; see Rules 34(b)(4), 41(a) and (b); Foil v. Commissioner, 92 T.C. 376, 418 (1989), aff'd, 920 F.2d 1196 (5th Cir. 1990); Gibson v. Commissioner, T.C. Memo. 2007-224, 2007 Tax Ct. Memo LEXIS 224, at *8 n.5.

physical injuries or physical sickness".[4] "The term 'damages received (whether by suit or agreement)' means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs.

In order for damages to be excludable from gross income under section 104(a)(2), the taxpayer must demonstrate that: (1) the underlying cause of action is based upon tort or tort type rights and (2) the damages were received on account of personal injuries that are physical or a sickness that is physical. See sec. 104(a)(2); Commissioner v. Schleier, 515 U.S. at 337. The flush language of section 104(a) provides that emotional distress shall not be treated as a physical injury or physical sickness.

Respondent concedes that the underlying cause of action, a wrongful termination claim, which gave rise to Siemens' settlement payment, is based upon a tort or tort type right. Therefore, the first prong of the section 104(a)(2) test is satisfied. We will then consider whether petitioners satisfy the second prong of the test. Petitioners argue that the exacerbation of petitioner's depression symptoms as a result of her termination is a physical injury or physical sickness

---

[4] The Small Business Job Protection Act of 1996, Pub. L. No. 104-188, sec. 1605(a), 110 Stat. at 1838, amended sec. 104(a)(2) to limit the exclusion, inter alia, to "personal physical injuries or physical sickness". (Emphasis added.)

under section 104(a)(2).  Respondent contends that any of the depression symptoms petitioner suffered are properly classified as emotional distress under the flush language of section 104(a).  The main issue we must decide is whether petitioner's symptoms qualify as a physical injury or physical sickness under section 104(a)(2) or rather as emotional distress under the flush language of section 104(a).

Petitioner's counselor, D. Lynn Lewis, did not testify at trial.  Petitioners offered into evidence a two-page letter (counselor's letter) from D. Lynn Lewis to petitioner.  The counselor's letter, dated March 10, 2010, was written at petitioner's request and summarizes the counselor's interactions with petitioner during their counseling sessions in 2008.  In the letter D. Lynn Lewis states that petitioner suffered from "increased levels of anxiety and depressive symptoms that seemed directly related to the termination from * * * [petitioner's] job."  The counselor's letter also noted that petitioner was receiving psychiatric services and medications from a psychiatrist.  Notably, the counselor's letter did not mention that petitioner suffered from any physical injuries or specific physical symptoms of depression.

At trial petitioners testified that she suffered from insomnia, sleeping too much, migraines, nausea, vomiting, weight gain, acne, and pain in her back,

shoulder, and neck. Petitioner testified that these symptoms were a result of her depression. Aside from the summary testimony of petitioners, no other evidence was submitted to prove that petitioner suffered from any physical injuries.

The flush language of section 104(a) provides: "For purposes of paragraph (2), emotional distress shall not be treated as a physical injury or physical sickness." The legislative history of section 104(a) states it "is intended that the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress." H.R. Conf. Rept. No. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041. The legislative history of section 104 specifically contemplates that emotional distress may manifest itself in physical symptoms by explicitly listing physical symptoms as symptoms that may result from emotional distress. See id. Congress' listing of physical symptoms of emotional distress is evidence of Congress' intent to establish that not every physical symptom will qualify as a physical injury or physical sickness under section 104(a)(2). Therefore, the fact that a taxpayer suffers physical symptoms from emotional distress does not automatically qualify the taxpayer for an exclusion from gross income under section 104(a)(2). See Wells v. Commissioner, T.C. Memo. 2010-5, 2010 Tax Ct. Memo LEXIS 4, at *9 ("[A]ny amounts paid in such

circumstances for physical symptoms of emotional distress are similarly includable in income.").

Petitioners rely on Domeny v. Commissioner, T.C. Memo. 2010-9, 2010 Tax Ct. Memo LEXIS 9, to support their argument that the flareup of petitioner's depression symptoms is a physical injury or physical sickness under section 104(a)(2). In Domeny, the taxpayer suffered from multiple sclerosis[5] (MS). Id. at *2. Due to a hostile and stressful work environment, the taxpayer's MS symptoms began to "flare up". Id. at *3. The taxpayer experienced MS symptoms such as vertigo, spinning head, extreme fatigue, shooting pain in her legs, and difficulty walking due to numbness in her feet. Id. at *4-5. The taxpayer's primary care physician determined the taxpayer was too ill, because of her MS symptoms, to return to work. Id. at *4. After giving the physician's instructions to her supervisor, the taxpayer was terminated from her job. Id. After her termination, the taxpayer's MS symptoms began "spiking". Id. at *5.

The instant case is distinguishable from Domeny. The evidence of petitioner's symptoms does not show the level of physical injury or physical

---

[5]Multiple sclerosis is a "demyelinating disease marked by patches of hardened tissue in the brain or the spinal cord and associated esp[ecially] with partial or complete paralysis and jerking muscle tremor." Webster's Collegiate Dictionary 764 (10th ed. 1997).

sickness in <u>Domeny</u>. Of the eight symptoms[6] that petitioners testified to at trial, five of the symptoms[7] are very similar to the nonexclusive list of emotional distress symptoms in the legislative history of section 104(a). <u>See</u> H.R. Conf. Rept. No. 104-737, <u>supra</u> at 301 n.56, 1996-3 C.B. at 1041 (emotional distress includes symptoms such as "e.g., insomnia, headaches, stomach disorders"). Petitioner testified that her symptoms were a result of her depression. However, petitioners did not provide evidence that petitioner's physical symptoms of depression were severe enough to rise to the level of a physical injury or physical sickness. <u>See</u> <u>Wells v. Commissioner</u>, 2010 Tax Ct. Memo LEXIS 4, at *9 (money paid for emotional distress due to depression is includable in income); <u>Sanford v. Commissioner</u>, T.C. Memo. 2008-158, 2008 Tax Ct. Memo LEXIS 159, at *9 (emotional distress can be manifested in physical symptoms such as depression, skin irritation, appetite loss, asthma, sleep deprivation, and severe headaches); <u>Lindsey v. Commissioner</u>, T.C. Memo. 2004-113, 2004 Tax Ct. Memo LEXIS 113, at *14 (fatigability, occasional indigestion, and difficulty sleeping are encompassed within the definition of emotional distress), <u>aff'd</u>, 422 F.3d 684 (8th Cir. 2005). Unlike the

---

[6]At trial petitioners testified that petitioner suffered from insomnia, sleeping too much, migraines, nausea, vomiting, weight gain, acne, and pain in her back, shoulder, and neck.

[7]Insomnia, sleeping too much, migraines, nausea, and vomiting.

taxpayer in <u>Domeny</u>, a medical doctor did not determine that petitioner was too ill to work.  In fact, the counselor's letter stated that petitioner suffered only from "increased levels of anxiety and depressive symptoms".  <u>See</u> <u>McGowen v. Commissioner</u>, 2011 Tax Ct. Memo LEXIS 185, at *2 (anxiety is a symptom of emotional distress); <u>Moulton v. Commissioner</u>, T.C. Memo. 2009-38, 2009 Tax Ct. Memo LEXIS 40, at *18 (depression falls within the category of emotional distress under the flush language of section 104(a)).

We conclude on the basis of the preponderance of the evidence that petitioner's depression and corresponding physical symptoms do not qualify as physical injuries or physical sickness under section 104(a)(2).  Therefore, we find that the $100,000 settlement payment from Siemens is not excludable under section 104(a)(2).

<u>Flush Language of Section 104(a)</u>

The flush language of section 104(a) permits a taxpayer to exclude from gross income the amount of damages received on account of emotional distress to the extent of the amount paid for medical care.[8]  We note that the depression and

---

[8]The flush language of sec. 104(a) provides:  "For purposes of paragraph (2), emotional distress shall not be treated as a physical injury or physical sickness.  The

(continued...)

physical symptoms of depression that petitioner suffered from qualify as emotional distress under the flush language of section 104(a).  See Moulton v. Commissioner, 2009 Tax Ct. Memo LEXIS 40, at *18 (depression falls within the category of emotional distress under the flush language of section 104(a)); H.R. Conf. Rept. No. 104-737, supra at 301 n.56, 1996-3 C.B. at 1041 (emotional distress includes symptoms such as "e.g., insomnia, headaches, stomach disorders").  We further note petitioners would have been able to exclude from income a portion of the settlement payment equal to the amount spent on petitioner's medical care.  However, there is no substantiation in the record of any of petitioner's actual expenditures for medical care.  Therefore, we find that petitioners are not entitled to any exclusion from gross income under the flush language of section 104(a).

Accuracy-Related Penalty

Section 6662(a) and (b)(2) imposes a 20% accuracy-related penalty on any portion of an underpayment attributable to a substantial understatement of income tax.  Section 7491(c) provides that the Commissioner bears the burden of production

---

[8](...continued)
preceding sentence shall not apply to an amount of damages not in excess of the amount paid for medical care (described in subparagraph (A) or (B) of section 213(d)(1)) attributable to emotional distress."

with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner meets his burden of production, however, the burden of proof remains with the taxpayer, including the burden of proving that the penalty is inappropriate because of reasonable cause under section 6664. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

There is a substantial understatement of income tax for any taxable year if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A). The understatement of income tax on petitioners' joint Federal income tax return is substantial. Respondent has met his burden of production in that he has shown that petitioners improperly excluded the $100,000 settlement payment from gross income on their joint Federal income tax return for 2008. See Longoria v. Commissioner, T.C. Memo. 2009-162, 2009 Tax Ct. Memo LEXIS 162, at *31.

Reasonable Cause

Petitioners argue that they had reasonable cause for excluding the $100,000 settlement payment from gross income on their joint Federal income tax return for

2008. "Reasonable cause requires that the taxpayer have exercised ordinary business care and prudence as to the disputed item." Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 98 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). The good-faith reliance on the advice of an independent, competent professional as to the tax treatment of an item may meet this requirement. Id. (citing United States v. Boyle, 469 U.S. 241 (1985)); sec. 1.6664-4(b), Income Tax Regs. Whether a taxpayer relies on the advice and whether such reliance is reasonable hinge on the facts and circumstances of the case and the law that applies to those facts and circumstances. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 98; sec. 1.6664-4(c)(1), Income Tax Regs. For reliance to be reasonable, "the taxpayer must prove by a preponderance of the evidence that the taxpayer meets each requirement of the following three-prong test: (1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 99; see Sanford v. Commissioner, 2008 Tax Ct. Memo LEXIS 159, at *17.

At trial petitioner testified that she was advised by her counsel that the settlement payment was not taxable. Petitioners' counsel is a certified public

accountant (C.P.A.) and lawyer. The professional qualifications of petitioners' counsel justified their reliance on his advice. We note there is a level of uncertainty regarding when physical manifestations of emotional distress give rise to a physical injury or physical sickness under section 104(a)(2). Compare Moulton v. Commissioner, 2009 Tax Ct. Memo LEXIS 40, at *18 ("depression, sleep disorders, or elevated blood sugar levels * * * fall within the category of 'emotional distress'"), with Domeny v. Commissioner, T.C. Memo. 2010-9 (physical symptoms of multiple sclerosis that were exacerbated by emotional distress qualified as a physical injury or physical sickness). Although we note petitioner's symptoms do not qualify as a physical injury or physical sickness under section 104(a)(2), petitioners' counsel's advice was not so unreasonable as to not justify petitioners' reliance on it. See Longoria v. Commissioner, 2009 Tax Ct. Memo LEXIS 162, at *33 (taxpayer who received advice from C.P.A. to exclude settlement under section 104(a)(2) was not liable for the section 6662(a) penalty when the Court determined injuries were result of emotional distress).

Petitioners' counsel represented petitioner in the settlement agreement with Siemens. This satisfies the second prong of the test as petitioner's counsel knew all the necessary facts concerning the settlement agreement. The third prong of the test was satisfied by petitioner's testimony that she relied on counsel's advice that the

$100,000 settlement payment was excludable from gross income in filing petitioners' 2008 joint Federal income tax return.

We conclude that petitioners acted with reasonable cause and in good faith as to excluding the settlement payment from gross income. Accordingly, we hold that petitioners are not liable for the accuracy-related penalty under section 6662(a).

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.