# United States Tax Court

T.C. Memo. 2025-33

JOSEPH J. ZAJAC, III,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 1886-15.                                    Filed April 10, 2025.

————————

Joseph J. Zajac III, pro se.

*Alexander N. Martini* and *Lauren B. Epstein*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, *Chief Judge*:  Respondent determined the following deficiencies and penalties with respect to petitioner's federal income tax for taxable years 2007–09 (years in issue):

| Year | Deficiency[1] | § 6662(a) Penalty[2] |
|------|------|------|
| 2007 | $36,483 | $7,297 |
| 2008 | 13,225 | 2,645 |
| 2009 | 11,486 | 2,297 |

—————

[1] In the First Amendment to Answer respondent disallowed additional deductions.  On that basis, respondent asserts additional deficiencies and penalties for the years in issue to be computed under Rule 155 as discussed below.

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

[*2]   Respondent disallowed the following deductions that petitioner claimed on Schedules C, Profit or Loss From Business, attached to his Forms 1040, U.S. Individual Income Tax Return, for the years in issue:

| Description | Year | | |
|---|---|---|---|
| | 2007 | 2008 | 2009 |
| Car and truck expenses | $9,699 | $9,508 | $5,222 |
| Depreciation | 13,121 | 12,720 | 6,372 |
| Legal and professional fees | 13,091 | 9,072 | 4,529 |
| Meals and entertainment | 1,925 | 330 | 670 |
| Other expenses: writeoff billables | – | – | 36,000 |
| Rent: Other business property | 9,600 | – | – |
| Travel | 15,283 | 6,282 | 8,415 |
| Utilities | 2,923 | 2,822 | 2,494 |

Respondent also disallowed petitioner's (1) $3,345 moving expense for 2008, (2) $4,700 noncash charitable contribution deduction for 2008, and (3) $22,970 and $9,827 job-related and miscellaneous expenses for 2007 and 2008, respectively.

After concessions,[3] the issues remaining for consideration are whether petitioner (1) properly excluded certain settlement proceeds from gross income, (2) is entitled to the various deductions listed above, and (3) is liable for section 6662(a) accuracy-related penalties.

---

[3] Petitioner conceded that the following should be included in gross income: (1) interest income of $44, $216, and $17 for 2007, 2008, and 2009, respectively; and (2) miscellaneous income of $480 and $200 for 2008.  Respondent conceded the following: (1) the remaining income adjustments except for the $35,001 in settlement proceeds; (2) the self-employment tax on the unreported income adjustments; and (3) the Schedule C deductions for "reimbursed expenses" of $14,907, $5,719, and $4,389 for 2007, 2008, and 2009, respectively.

In the parties' Stipulation of Settled Issues, the parties additionally agreed that petitioner is entitled to Schedule C deductions for the business use of his residence of $7,470, $6,469, and $6,113 for 2007, 2008, and 2009, respectively.

[*3]                              FINDINGS OF FACT

Some of the facts are stipulated and are so found. The Stipulations of Facts and the attached Exhibits are incorporated herein by this reference. Petitioner was a resident of Bermuda when he timely filed his Petition.

*The Settlement Proceeds*

On Saturday, May 1, 2004, petitioner was arrested on charges of domestic assault and battery after his wife alleged to the Bolton, Massachusetts, police that he had physically attacked her. Petitioner was incarcerated over the weekend.

While in police custody, he sought medical attention but did not receive any. At the time of these events, petitioner's wife was unwilling to pursue a restraining order against him that had been sought by the Bolton police. When petitioner was subsequently arraigned, his wife was unwilling to testify against him and the charges were dropped.

On September 13, 2005, petitioner sent a claim letter to the Town of Bolton seeking $100,000 in damages resulting from the arrest and incarceration. He asserted that he suffered physical and emotional injuries as well as violation of various constitutional and state law entitlements under the Second, Fourth, Fifth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments to the U.S. Constitution, including unlawful seizure of one of his firearms, suspension of his gun license, and an unlawful search of his residence. He alleged that following the arrest the arresting officer drove recklessly around corners, resulting in petitioner's being tossed around in the back seat of the vehicle.

The claim letter advised the Town of Bolton that petitioner had preexisting lower back and knee conditions. Petitioner asserted these conditions were aggravated during his arrest and the areas became further inflamed on account of the conditions in the holding cell during his incarceration. He further asserted that he sustained injuries to his wrists, knees, and ankles during the arrest. His claim letter stated that the arresting officer acted in a manner to intentionally inflict emotional distress upon petitioner.

On April 6, 2007, the parties settled petitioner's claim by a Release of Claims (agreement), stipulating a $35,001 payment from the Town of Bolton to petitioner in exchange for the release of his claims.

[*4] The agreement provided that petitioner was releasing all claims resulting from or against the Town of Bolton and its agents from "the accident, casualty or event which occurred on or about May 1, 2004[,] at or near Bolton, MA." On April 16, 2007, petitioner deposited the $35,001 settlement check to his bank account. He did not include the proceeds in gross income for 2007.

Following his arrest, petitioner attended therapy sessions. Steven Shapse, a psychologist, evaluated him in April and May of 2006. On March 1, 2008, petitioner requested an executive summary of the psychological test report conducted in 2006. In the executive summary, Dr. Shapse concluded that petitioner met the criteria for the following: dysthymia, anxiety, post-traumatic stress disorder, and personality disorder.

On May 7, 2009, petitioner sued his then-former wife in the U.S. District Court for the Middle District of Florida. The complaint asserted that the agreement between petitioner and the Town of Bolton compensated petitioner for "false arrest; false imprisonment; illegal search and seizure; intentional infliction of emotional distress; civil rights violations; malicious prosecution; abuse of process; conspiracy; and defamation of character." The district court dismissed the suit for lack of personal jurisdiction over the defendant.

*Petitioner's Employment and Other Income*

During the years in issue petitioner worked as an executive business consultant. He provided services as an independent contractor to Performance Improvement Partners, LLC (PIP), from February 15, 2006, to February 13, 2009. Beginning on August 31, 2009, he provided services as an independent contractor to Richmont Graduate University (RGU).

In 2007 petitioner received $127,080 from PIP, which included $14,907 in reimbursed expenses. In 2008 petitioner received $77,719 from PIP, which included $5,719 of reimbursed expenses. In 2009 petitioner received $3,000 from PIP and $75,489 from RGU, the latter of which included $4,389 in reimbursed expenses.

*Moving Expenses*

In June 2008 petitioner moved from Massachusetts to Florida and reported moving expenses on his 2008 Form 1040. On his Form 3903, Moving Expenses, petitioner reported $3,345 in expenses for

[*5] transportation, storage, and travel. Petitioner presented these expenses through an itemized income and expenses spreadsheet that included charges from January 25 to June 9, 2008. The spreadsheet also accounted for meal expenses.

Before and after petitioner's move, he provided services on behalf of PIP to the same client, American Radiology Services. He mostly worked remotely from his residence during this time. Petitioner did not work from February 14, 2009, until starting with RGU on August 31, 2009. Petitioner's last paycheck from PIP was deposited on March 16, 2009. His first paycheck from RGU was deposited on August 31, 2009.

*Vehicle Expenses and Depreciation*

During the years in issue petitioner owned one vehicle, a 2003 Cadillac Escalade (Escalade) that he used for personal and business purposes. He reported expenses—including gas, oil, tires, repairs, insurance, vehicle registration, etc.—for this vehicle for each of the years in issue. Petitioner submitted as exhibits spreadsheets which itemized the reported expenses.

Petitioner reported on his Car and Truck Expenses Worksheets, used to prepare his returns for the years in issue, that 92%, 91%, and 91% of the miles traveled for 2007, 2008, and 2009, respectively, were business miles. He used these percentages to report expenses related to business. He reported his actual expenses in calculating his total car and truck expenses for the years in issue.

Petitioner reported on his 2007 federal income tax return that his original cost basis in the Escalade was $57,173. Petitioner claimed and was allowed the following deductions with respect to the Escalade before 2007: $22,319 in depreciation deductions on Schedule A, Itemized Deductions, for 2003, $22,775 in depreciation deductions on Schedule C for 2004, $5,508 in depreciation deductions on Schedule C for 2005, and $11,355 in depreciation deductions on Schedule C. Petitioner was allowed $61,957 in depreciation deductions from 2003 to 2006 in total. During the years in issue he claimed an additional $32,213 for the same vehicle.

**[\*6]** *Legal and Professional Fees*

Petitioner deducted $13,091, $9,072, and $4,529 in legal and professional fees on Schedules C for 2007, 2008, and 2009, respectively.[4] During the years in issue petitioner paid the following professionals for their services: attorneys Vincent Pusateri II and Edward Monohan V, psychologist Dr. Shapse, and economic consultant Jonathan Shefftz.

Mr. Pusateri represented petitioner on the following issues: divorce, gun rights, probate, and the agreement with the Town of Bolton. Mr. Pusateri billed petitioner for services provided from March 2007 through January 2009. Mr. Monohan represented petitioner in the collection of divorce settlement proceeds. Mr. Monohan billed petitioner for services provided from December 2005 through September 2007.

Dr. Shapse counseled petitioner with his respective emotional and psychological issues allegedly stemming from the 2004 arrest and incarceration and earlier military career. Dr. Shapse billed petitioner for services provided from March 2006 through February 2009. Mr. Shefftz calculated economic expenses related to the counseling and created an expert report describing his findings. Mr. Shefftz provided services to petitioner in March, May, and July 2007 as well as in January 2008.

*Meals, Entertainment, and Travel*

Petitioner reported various meals, entertainment expenses, and travel expenses during the years in issue. These expenses totaled $17,208, $6,612, and $9,085 for 2007, 2008, and 2009, respectively.

*Schedule C "Writeoff"*

For 2009 petitioner claimed a $36,000 deduction on Schedule C for work he performed for clients for which he was not paid. He reported no gross income with respect to this activity.

*Business Use of Home: Rent and Utilities*

For 2007 and 2008 petitioner claimed business use of home deductions on Schedules C. On his Form 8829, Expenses for Business Use of Your Home, for each year, petitioner reported business-related

---

[4] He deducted the same 2007 and 2008 fees on Schedule A but conceded at trial that doing so was improper.

[*7] rent and utilities expenses. For 2007 petitioner separately deducted his business-related rent on Schedule C, Part II. For all years in issue petitioner separately deducted his business-related utility expenses on Schedules C, Part II.

*Charitable Contributions*

For 2008 petitioner claimed noncash charitable contribution deductions on Schedule A, Itemized Deductions. On his Form 8283, Noncash Charitable Contributions, petitioner reported donations to Ginny's Helping Hand, Inc. (Ginny's), of furniture, clothing, and tools. He ascribed a cost basis of $25,000 to the property and claimed its fair market value was $4,500, which he derived from a consignment store. The Form 8283 also described donations of two cellphones with accessories to a cellphone recycling center.

*Job-Related and Miscellaneous Expenses*

Petitioner reported job expenses and miscellaneous deductions on Schedules A for 2007 and 2008. These included vehicle depreciation (for 2007 only), tax preparation fees, computer and camera depreciation, professional fees, investment research expenses, and tax software expenses.

*Petitioner's Tax Returns, IRS Examination, and Notice of Deficiency*

On September 2, 2014, the revenue agent examining petitioner's returns sought approval via email from his immediate supervisor to send petitioner a Letter 5153 and the Examination Report. These documents recommended the imposition of section 6662(a) penalties on the basis of petitioner's substantial understatements of income tax. After receiving electronic approval, the revenue agent sent petitioner the documents that same day. On September 3, 2014, the revenue agent's immediate supervisor signed a Civil Penalty Approval Form, noting thereon that the penalties had been "approved by email to [the revenue agent]."

On May 8, 2017, respondent filed a Motion for Leave to File First Amendment to Answer and lodged the Amendment. Associate Area Counsel (AAC) Lauren Epstein made the determination to assert increased deficiencies and thereby increased penalties on the basis of further disallowances to petitioner's claimed deductions. At that time, AAC Mark Tober was Ms. Epstein's immediate supervisor. Mr. Tober approved Ms. Epstein's determination by electronically inputting his

[*8] initials next to hers on the Motion and Amendment. On June 6, 2017, the Court granted respondent's Motion.

OPINION

I. *Burden of Proof*

Generally, the Commissioner's determinations set forth in a Notice of Deficiency are presumed correct, and taxpayers bear the burden of showing the determinations are erroneous. Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). In respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer, the burden of proof shall be with the Commissioner. Rule 142(a)(1).

II. *Settlement Proceeds*

A. *Legal Standards*

Section 61(a) provides that "gross income means all income from whatever source derived." The corollary to the "sweeping scope" of this section, *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429 (1955), is that "exclusions from income must be narrowly construed," *Commissioner v. Schleier*, 515 U.S. 323, 328 (1995) (quoting *United States v. Burke*, 504 U.S. 229, 248 (1992) (Souter, J., concurring in the judgment)).

Section 104(a)(2) specifically excludes from gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness." *See Commissioner v. Schleier*, 515 U.S. at 328–29. Emotional distress is not treated as a physical injury or physical sickness. § 104(a) (flush language). Damages for emotional distress are excludable only if they are "attributable to a physical injury or physical sickness." Treas. Reg. § 1.104-1(c)(1).

When a taxpayer receives damages pursuant to a settlement agreement, the nature of the claim that was the actual basis for the settlement controls whether the damages are excludable under section 104(a)(2). *See Burke*, 504 U.S. at 234; *see also Bagley v. Commissioner*, 105 T.C. 396, 406 (1995) ("[T]he critical question is, in lieu of what was the settlement amount paid."), *aff'd*, 121 F.3d 393 (8th Cir. 1997). "Ultimately, the character of the payment hinges on the payor's

[*9] dominant reason for making the payment." *Green v. Commissioner*, 507 F.3d 857, 868 (5th Cir. 2007), *aff'g* T.C. Memo. 2005-250. "[T]he nature of underlying claims cannot be determined from a general release [of claims] that is broad and inclusive." *Ahmed v. Commissioner*, T.C. Memo. 2011-295, slip op. at 8 (citing *Connolly v. Commissioner*, T.C. Memo. 2007-98), *aff'd*, 498 F. App'x 919 (11th Cir. 2012). Where a settlement payment addresses a claim of physical injuries and violations of other rights, the Court may determine which portion is attributable to physical injuries or sickness. *Henderson v. Commissioner*, T.C. Memo. 2003-168, slip op. at 7–8, *aff'd*, 104 F. App'x 47 (9th Cir. 2004).

B.    *Analysis*

Petitioner received a $35,001 payment from the Town of Bolton in settlement of his claims arising from his 2004 arrest and incarceration. The agreement memorializing the settlement provides that the payment was made on account of "the accident, casualty or event which occurred on or about May 1, 2004[,] at or near Bolton, MA." It provides no other context. For that reason, we must ascertain the Town of Bolton's intent in making the payment. The intent of the payor may be determined by looking at all the facts and circumstances leading to the settlement, and the allegations in the injured party's complaint. *Green v. Commissioner*, 507 F.3d at 868.

Respondent argues that petitioner's description of the settlement payment from the lawsuit against his former wife in Florida failed to mention physical injury or sickness, and therefore no portion of the payment is excludable under section 104. However, the applicable test concerns the intent of the payor, not the payee. *See Green v. Commissioner*, 507 F.3d at 868. Accordingly, we must instead ascertain the Town of Bolton's intent in making the payment, and the information available to the town at the time it made that decision.

Petitioner's account of the allegedly unlawful arrest and incarceration that occurred on and after May 1, 2004, includes descriptions of both physical injury and other harms. The experience of pain, in and of itself, constitutes physical injury for purposes of section 104(a)(2). *See Domeny v. Commissioner*, T.C. Memo. 2010-9 (finding pain flare-ups from preexisting conditions of multiple sclerosis cause by settlement payor's conduct constitute physical injuries for purposes of section 104(a)(2)); *Amos v. Commissioner*, T.C. Memo. 2003-329 (experiencing pain from a groin kick, even absent serious signs of trauma, constitutes a physical injury for purposes of section 104(a)(2)).

[*10] Petitioner's claim letter asserted that the officers, in allegedly causing his physical injuries, intentionally inflicted emotional distress upon him.

Petitioner has presented evidence showing his claims of multiple physical injuries resulting from his arrest and incarceration. Petitioner has likewise shown evidence of claims made to the Town of Bolton of emotional distress associated with those alleged physical injuries. While emotional distress is not considered a physical injury itself, damages for emotional distress are excludable from income when associated with physical injuries. Treas. Reg. § 1.104-1(c)(1).

Petitioner's claim letter stated that he suffered cuts and bruises as a result of the arresting officers' use of excessive force during his arrest. The letter further stated that he had preexisting lower back and knee conditions that were exacerbated, causing significant pain, as a result of the force used in his arrest and the conditions to which he was exposed during incarceration. The claim letter also stated other police misconduct adversely affecting petitioner's constitutional rights.

We conclude that at least some of the portion of the payment was made by the Town of Bolton to settle its potential liability for its agents' infliction of pain and physical injury. In doing so, we make the reasonable inference that the Town made the payment at least in part because it perceived it was potentially exposed to some liability for petitioner's physical pain and injuries.

Given that the claim letter alleged other significant unlawful conduct centered around what may have been an unlawful arrest and imprisonment by the Town's agents, we are also persuaded that a portion of the payment reflected the Town's perception of its potential liability for claims other than those of physical pain and injuries. Using our best judgment, we find that $17,500 of the $35,001 payment is attributable to the Town's concern about its liability for petitioner's physical pain and injuries resulting from the actions of its police officers.

We conclude with respect to a portion of the settlement amount that petitioner has carried his burden to prove that the settlement proceeds were made to compensate him for physical injury or sickness. See Rule 142(a)(1). We find that the Town of Bolton paid petitioner $17,500 on account of petitioner's claimed physical injuries and emotional distress and $17,501 of that amount on account of petitioner's other claims. We further find that for 2007 petitioner is entitled under

**[*11]** section 104(a)(2) to exclude from his gross income $17,500 of the settlement amount in issue and is required under section 61(a) to include in his gross income $17,501 of that amount.

III.    *Disputed Deductions*

Deductions are a matter of legislative grace, and taxpayers must prove their entitlement to a claimed deduction.  Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934).  To that end, taxpayers are required to substantiate each claimed deduction by maintaining records sufficient to establish the amount of the deduction and to enable the Commissioner to determine the correct tax liability.  § 6001; *see also Higbee v. Commissioner*, 116 T.C. 438, 440 (2001).

Normally, the Court may estimate the amount of a deductible expense if a taxpayer establishes that an expense is deductible but is unable to substantiate the precise amount.  *See Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930); *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985).  This principle is often referred to as the *Cohan* rule. *See, e.g.*, *Estate of Reinke v. Commissioner*, 46 F.3d 760, 764 (8th Cir. 1995), *aff'g* T.C. Memo. 1993-197.

Taxpayers are generally allowed to deduct the ordinary and necessary expenses incurred in carrying on a trade or business.  § 162(a). An expense is ordinary if it is normal or customary within a particular trade or business and necessary if it is appropriate or helpful to the trade or business.  *See Commissioner v. Heininger*, 320 U.S. 467, 471 (1943). No deduction is allowed for personal, living, or family expenses. § 262(a).

A.    *Moving Expenses*

1.    *Legal Standards*

Section 217(a) allows a deduction for "moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work."

The term "commencement" includes the beginning of work by a taxpayer for the same employer or in the case of a self-employed individual in the same trade or business at a new location.  Treas. Reg. § 1.217-2(a)(3)(i).    To qualify as being in connection with the

[*12] commencement of work, the move must bear a reasonable proximity both in time and place to such commencement at the new principal place of work. *Id.* An individual is considered "self-employed" if he or she performs personal services (1) as the owner of the entire interest in an unincorporated trade or business or (2) as a partner in a partnership carrying on a trade or business. § 217(f).

Section 217(b)(1) generally defines "moving expenses" as the reasonable expenses of moving household goods and personal effects from the former residence to the new residence and related travel. It does not include meals. Section 217(c) provides conditions for the deductibility of moving expenses. Moving expenses shall be deductible only if the taxpayer's new principal place of work is at least 50 miles farther from his residence than was his former principal place of work or, if he had no former place of work, is at least 50 miles from his former residence. § 217(c)(1).

Section 217(c)(2) provides that no deduction shall be allowed unless (A) the taxpayer is a full-time employee at the new principal place of work during the 12-month period following his arrival in the general location of his new principal place of work for at least 39 weeks or (B) during the 24-month period following the taxpayer's arrival in the general location of his new principal place of work, the taxpayer is a full-time employee or performs services as a self-employed individual on a full-time basis for at least 78 weeks and at least 39 weeks are in the first 12-month period. We refer to this requirement as the "time test." Whether a taxpayer is a full-time employee during any particular week depends upon the customary practices of the occupation in the geographical area in which the taxpayer works. Treas. Reg. § 1.217-2(c)(4)(iv)(a).

2.  *Analysis*

Petitioner claimed a moving expense deduction for 2008, when he moved from Massachusetts to Florida. Respondent contends that petitioner should not be allowed to deduct these costs because he did not satisfy the time test. Respondent also asserts that petitioner has not substantiated his costs and that he included the costs of meals, which are specifically disallowed by section 217. We agree.

At all relevant times, petitioner was working as an independent contractor for PIP or RGU. He provided these services as the owner of the entire interest in an unincorporated trade or business and therefore

**[\*13]** qualifies as a self-employed individual for the purpose of calculating moving expenses. *See* § 217(f)(1). Petitioner therefore must satisfy the 24-month time requirement found in section 217(c)(2)(B). He must have worked full time for at least 39 weeks during the 24-month period immediately following his arrival. *See id.*

Petitioner contends he began work from Florida on June 1, 2008. Therefore, the relevant period for analyzing the time test is from June 2008 to June 2009. The invoices petitioner submitted indicate that he worked full time for PIP for June through December of 2008 and up to February 13, 2009. That would be approximately 37 weeks. He did not begin working for RGU until August 31, 2009. On that basis he did not satisfy the 39-week requirement in either section 217(c)(2)(A) or (B).

Even if petitioner had worked full time during the relevant period, he has not adequately substantiated the expenses he allegedly incurred. His itemized income and expenses spreadsheet is not reconcilable with his Form 3903. He additionally included meal expenses which are specifically disallowed by section 217. Accordingly, petitioner is not allowed the moving expense deduction provided by section 217(a) for lack of substantiation. We sustain respondent's determination to disallow petitioner's moving expense deduction for 2008.

B.     *Vehicle Expenses and Depreciation*

1.     *Legal Standards*

Section 167(a) allows as a depreciation deduction a reasonable allowance for the exhaustion, wear, and tear of property used in the taxpayer's trade or business or property held for the production of income. The adjusted basis discussed in section 1011 provides the basis on which depreciation is computed. § 167(c)(1).

No deduction is allowed for any listed property unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (1) the amount of the expense; (2) the time and place of the expense; (3) the business purpose of the expense; and (4) the business relationship to the taxpayer of the persons using the property. § 274(d) (flush language). "Listed property" is defined to include any passenger automobile. § 280F(d)(4)(A)(i).

**[\*14]**      2.    *Analysis*

On petitioner's Forms 1040, Schedules C, he deducted vehicle expenses and depreciation for the years in issue. Because respondent disallowed these deductions in the Amendment to Answer, respondent bears the burden of proof as to this determination. *See* Rule 142(a)(1).

Respondent contends that the vehicle expense and depreciation deductions should not be allowed because petitioner did not satisfy the strict substantiation rules provided in section 274(d). Respondent asserts that petitioner did not keep contemporaneous mileage logs, instead recreating incomplete records in anticipation of trial without providing any corroborating evidence. Respondent also notes that petitioner's itemized categories reports for the years in issue are not reconcilable with the amounts he deducted on Forms 1040. We agree with respondent that these failures indicate that section 274(d) was not satisfied.

With respect to the depreciation deductions, respondent asserts that petitioner's vehicle had been fully depreciated before the years in issue. Petitioner noted on his 2009 Form 1040 that his original cost basis in the vehicle was $57,173. As of 2007, petitioner had been allowed $61,957 in depreciation deductions on the same vehicle. Thus, any additional amounts that he claimed for the years in issue were in excess of that allowed under section 167.

Accordingly, we find that respondent has met his burden of proof as to the vehicle expenses and depreciation that petitioner claimed on Schedules C for the years in issue. We sustain respondent's determination that none of these amounts should be allowed as deductions.

      C.    *Legal and Professional Fees*

      1.    *Legal Standards*

We have previously held that legal fees are deductible on a Schedule C only if the matter with respect to which the fees were incurred originated in the taxpayer's trade or business. *Colvin v. Commissioner*, T.C. Memo. 2007-157, slip op. at 36, *aff'd*, 285 F. App'x 157 (5th Cir. 2008); *see United States v. Gilmore*, 372 U.S. 39, 49 (1963) (holding that "the origin and character of the claim with respect to which an expense was incurred . . . is the controlling basic test" for deductibility).

[*15] Section 212(1) provides for the deduction of all ordinary and necessary expenses paid or incurred during a taxable year "for the production or collection of income." The purpose of this section is to extend deductions previously allowed only in a "trade or business" context to certain nonbusiness situations. *Wagner v. Commissioner*, 78 T.C. 910, 915 (1982).

2.    *Analysis*

During the years in issue petitioner was hired as an independent contractor to provide business consulting advice to the clients of PIP and RGU. On the Schedules C of the returns for the years in issue, he deducted a combined $26,692 for legal and professional fees. The fees represent costs incurred in hiring two attorneys, a psychologist, and an economic consultant.

None of the matters on which the attorneys were employed originated with petitioner's consulting business. These were all personal matters: divorce, debt collection, and defamation suits against petitioner's former wife; carry license reinstatement; settling the false arrest claim; etc. The issues for which petitioner sought help from psychologist Dr. Shapse were similarly not business related. They dealt with the emotional fallout from the alleged false arrest in 2004 and petitioner's military career. Petitioner hired consultant Mr. Shefftz to estimate economic damages in a suit against his former wife. Because none of these matters arose from petitioner's Schedule C business activity, they are not deductible as section 162 ordinary and necessary expenses.

Petitioner argues that some of the legal and professional fees were incurred to protect his business reputation and therefore should be deductible under section 162. Specifically, he alleges that payments to Mr. Monohan, Dr. Shapse, and Mr. Shefftz were made on account of his business reputation. Respondent contends that this assertion is not supported by the record.

At trial petitioner testified that his legal troubles with his former wife created issues in attempting to secure contracts for work. He described two situations in Bermuda where he was interviewing for a job and his allegedly false criminal record was broached. On the basis of those instances, petitioner argued that his primary goal in hiring legal counsel was to vindicate himself so that employers would not prejudice him in the hiring process.

**[\*16]** These described legal troubles, however, do not appear to be his original intent for seeking legal counsel. At the time he sought counsel, he was trying to solve the legal issues at hand: reinstating his gun license, completing his divorce proceedings, settling the false arrest issue, etc. The fees involved are not ordinary and necessary business expenses within the meaning of section 162. *See Kleinschmidt v. Commissioner*, 12 T.C. 921, 924 (1949) (citing *Lloyd v. Commissioner*, 55 F.2d 842, 844 (7th Cir. 1932), *aff'g* 22 B.T.A. 674 (1931)).

Respondent contends that if the $35,001 settlement is includible in gross income—which we agree it is in part—then the legal fees incurred in obtaining the settlement could be deductible under section 212 as expenses incurred for the production or collection of income. Respondent argues that the lack of specificity in petitioner's recordkeeping, however, would preclude the Court from estimating the fees petitioner incurred with respect to the settlement. For that reason, respondent contends that even if section 212 could provide an avenue for deductibility, the Court is unable to apply the *Cohan* rule and estimate the fees incurred.

We agree with respondent. Section 212 generally provides for deducting the fees associated with obtaining the nonexcludable portion of the $35,001 settlement. However, the invoices petitioner provided from Mr. Pusateri are not sufficiently clear for us to ascertain exactly how much time he spent on the Town of Bolton arrest matter. We therefore cannot apply the *Cohan* rule to estimate the fees that petitioner incurred in obtaining the settlement proceeds. We sustain respondent's disallowance of these claimed deductions.

D. *Meals, Entertainment, and Travel*

During the years in issue petitioner reported on Schedules C reimbursed expenses as well as deductions for meals, entertainment, and travel. Respondent conceded that petitioner is entitled to deduct expenses for which he was reimbursed by PIP and RGU and which were included in gross receipts. Respondent contends that petitioner is not allowed to deduct these expenses twice on his Schedules C for the years in issue.

With regard to the 2007 and 2008 expenses petitioner bears the burden of proof because respondent disallowed deductions for these amounts in the Notice of Deficiency. Because respondent asserted that the 2009 expenses should be disallowed in the Amendment to Answer,

**[\*17]** respondent bears the burden of proof as to those expenses. *See* Rule 142(a)(1).

Petitioner is not permitted to deduct the same item in two places. *See Lucas v. Commissioner*, 79 T.C. 1, 7 (1982) ("A trade or business expense deduction is not allowable to an employee to the extent that the employee is entitled to reimbursement from his or her employer . . . ."). We sustain respondent's determination that any duplicative amounts are disallowed and will consider only whether the deductions differing in amount from those respondent conceded are allowable. Respondent contends that no further amounts for meals, entertainment, or travel should be allowed because petitioner has failed to satisfy section 274(d). *See* § 274(d)(1) and (2) (applying the strict substantiation requirements to travel and entertainment expenses). We agree.

Petitioner's itemized categories report is inconsistent with the amounts he input on Forms 1040 for the years in issue. At trial he did not introduce any source documents to otherwise substantiate the amounts allegedly expended. Section 274(d) is therefore not satisfied. Respondent has met the burden of proof with respect to the deductions claimed for 2009. We sustain respondent's determination as to all years in issue.

### E. *Writeoff: Billables*

For 2009 petitioner claimed a $36,000 deduction on Schedule C for work he performed for clients but did not receive payment for. At trial petitioner said he calculated this figure by totaling the hours of unbilled labor he performed and multiplying the same by his normal hourly rate. He testified that this could also represent a marketing expense for customer goodwill.

A taxpayer is not permitted to deduct the value of his own labor. *See Maniscalco v. Commissioner*, 632 F.2d 6, 7–8 (6th Cir. 1980) ("The expenditure of . . . labor does not constitute the payment of an expense within the meaning of [section] 162."), *aff'g per curiam* T.C. Memo. 1978-274. We sustain respondent's disallowance of petitioner's deduction for unbilled labor.

**[\*18]**  F.     *Rent and Utilities*

     1.     *Legal Standards*

Section 280A(a) provides that "no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." There is a limited exception to this rule for the portion of a dwelling unit that is exclusively used on a regular basis as the principal place of business for the taxpayer's trade or business. § 280A(c)(1).

Respondent disallowed the rent expense deductions in the Notice of Deficiency. Therefore, that determination maintains the presumption of correctness, and petitioner bears the burden of proof with respect to it. Respondent sought to disallow the utilities expense deductions in the Amendment to Answer. Respondent therefore bears the burden of proof as to the utilities expense issue. *See* Rule 142(a)(1).

     2.     *Analysis*

For 2007 and 2008 petitioner claimed business use of home deductions using Form 8829. The deductions on Forms 8829 accounted for petitioner's business-related rent and utilities expenses. In the Stipulation of Settled Issues, the parties agreed that petitioner was entitled to business use of home deductions for all years in issue.

Respondent contests only petitioner's decision to separately deduct the cost of rent for 2007 and utilities for 2007–09. Since it is uncontested that petitioner accounted for rent and utilities expenses from only his personal residence—and no other place—he is not allowed to deduct the same expenses in two places. We sustain respondent's determination to deny the rent and utilities expense deductions petitioner separately claimed on Schedules C.

     G.     *Charitable Contributions*

     1.     *Legal Standards*

Section 170(a)(1) allows taxpayers to deduct charitable contributions made within the taxable year. The term "charitable contribution" is defined in section 170(c). For contributions of property other than money, the deduction is generally equal to the property's fair market value at the time of the contribution. Treas. Reg. § 1.170A-1(c)(1).

**[\*19]** A deduction is allowed for the value of charitable contributions only if verified under regulations prescribed by the Secretary. § 170(a)(1).  The extent of substantiation required for donations depends on the value of the contributions.  For contributions of $250 or more, the taxpayer must substantiate the contribution by a contemporaneous written acknowledgment of the contribution by the donee organization. § 170(f)(8)(A).  For contributions of more than $500, the taxpayer must include with the return in which the contribution deduction is claimed a description of the contributed property and such other information as the Secretary may require.  § 170(f)(11)(B).

2.  *Analysis*

For 2008 petitioner claimed noncash charitable deductions to Ginny's as well as to a cellphone recycling center.  Petitioner provided descriptions of the donations along with the estimated fair market value.

The contributions made to Ginny's totaled $4,500, making them subject to the substantiation requirements in both section 170(f)(8)(A) and (11)(B).  At trial petitioner acknowledged that he failed to satisfy section 170(f)(8)(A) in that he was never provided a contemporaneous written acknowledgment of the contribution he made to Ginny's. Accordingly, no deduction is permitted for the contribution to Ginny's. *See* § 170(f)(8)(A).

Petitioner also made contributions to a cellphone recycling center. He did not list a cost basis for the phones but estimated the combined fair market value at $200.  Petitioner contends that he used a consignment shop to estimate the value of his donations.  Since the cellphone donations were valued at $200, they are not subject to the heightened substantiation requirements.  However, there is no indication that this contribution amounts to a "charitable contribution" within the meaning of section 170(c).  To be eligible for such treatment, the recycling center must be "organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition . . . , or for the prevention of cruelty to children or animals."  § 170(c)(2)(B).

Because petitioner has not shown that the cell phone recycling center was organized and operated exclusively for the purposes designated in section 170(c), this donation does not qualify as a

[*20] charitable contribution. We sustain respondent's determinations as to all of petitioner's noncash charitable contributions.

### H.    *Job-Related and Miscellaneous Expenses*

For 2007 and 2008 petitioner reported job expenses and miscellaneous deductions on Schedules A for 2007 and 2008. This included vehicle depreciation (only 2007), tax preparation fees, computer and camera depreciation, professional fees, investment research, and tax software.

We have previously disallowed any further vehicle depreciation petitioner claimed for the years in issue. *See supra* Part III.B. The vehicle in question was fully depreciated by 2006. The $9,108 petitioner claimed for 2007 is disallowed. We have also already disallowed petitioner's claimed deductions of professional fees because the matters were not related to petitioner's Schedule C business or were otherwise unsubstantiated. *See supra* Part III.C. The $13,091 and $9,072 deductions petitioner claimed for 2007 and 2008, respectively, are disallowed.

Respondent contends that petitioner cannot deduct the remaining expenses on Schedule A because he was not an employee during 2007 or 2008. Even if he could, respondent argues that petitioner has not substantiated these costs. We agree with respondent that Schedule A was not the correct place to deduct these expenses since petitioner was working as an independent contractor during the years in issue. Because these appear to be business expenses, it would have been more appropriate for petitioner to account for them on Schedule C in calculation of his business income. The record contains no substantiation for these costs. Accordingly, we sustain respondent's determinations as to petitioner's miscellaneous itemized deductions.

## IV.    *Penalties*

### A.    *Legal Standards*

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return if the underpayment is attributable to, inter alia, "[n]egligence or disregard of rules or regulations" or a "substantial understatement of income tax." Only one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even

**[\*21]** if that portion is subject to the penalty on more than one of the grounds set out in section 6662(b). Treas. Reg. § 1.6662-2(c).

Section 6662(d)(1) provides that there is a substantial understatement of income tax for any taxable year if the amount of the understatement exceeds the greater of (1) 10% of the tax required to be shown or (2) $5,000. The term "understatement" means the excess of the amount of tax required to be shown on the return over the amount of tax imposed which is shown on the return. § 6662(d)(2)(A).

The Commissioner bears the burden of production with respect to the liability of an individual for any penalty. *See* § 7491(c); *Graev v. Commissioner*, 149 T.C. 485, 493 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016). The Commissioner satisfies that burden by presenting sufficient evidence to show that it is appropriate to impose the penalty in the absence of available defenses. *See Graev*, 149 T.C. at 493 (citing *Higbee*, 116 T.C. at 446). For the substantial understatement penalty to apply, the Rule 155 computations must confirm a substantial understatement. *Clay v. Commissioner*, 152 T.C. 223, 246 (2019), *aff'd*, 990 F.3d 1296 (11th Cir. 2021).

The Commissioner's burden includes satisfying section 6751(b)(1), *see Graev*, 149 T.C. at 493–94, which provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher-level official as the Secretary may designate," § 6751(b).

The written supervisory approval is not required to take any specific form. *See Palmolive Bldg. Invs., LLC v. Commissioner*, 152 T.C. 75, 85–86 (2019). But it generally must be obtained no later than (1) the date on which the IRS issues the deficiency notice or (2) the date, if earlier, on which the IRS formally communicates to the taxpayer the Examination Division's determination to assert a penalty.[5] *See Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 15 (2020).

---

[5] The U.S. Court of Appeals for the Eleventh Circuit considers supervisory approval timely "so long as a supervisor approves an initial determination of a penalty assessment before it assesses those penalties." *Kroner v. Commissioner*, 48 F.4th 1272, 1276 (11th Cir. 2022), *rev'g in part* T.C. Memo. 2020-73. The U.S. Court of Appeals for the Ninth Circuit has held that for assessable penalties, which are not subject to deficiency procedures, section 6751(b) is satisfied if written supervisory approval is

**[\*22]** B.    *Supervisory Approval*

       1.    *Initial Penalty Determination*

Petitioner argues that because the supervising agent did not sign the Civil Penalty Approval Form until September 3, 2014, section 6751(b) was not satisfied.  We disagree.  The record reflects that the revenue agent assigned to petitioner's case obtained supervisory approval by email before sending petitioner Letter 5153 and the Examination Report.  This was noted by the supervising agent on the Civil Penalty Approval Form, where he left a handwritten notation that the penalties had already been "approved by email to RA."  Since the method of approving penalties need not take a particular form, *see Palmolive Bldg. Invs., LLC*, 152 T.C. at 85–86, the revenue agent timely obtained approval, *see Belair Woods*, 154 T.C. at 15.

       2.    *Subsequent Penalty Determination*

Petitioner similarly argues that section 6751(b) was not satisfied when respondent sought increased penalties in the Amendment to Answer.  He asserts that merely initialing the documents before filing them does not satisfy the statute.  We disagree.

AAC Epstein's immediate supervisor initialed the Motion to Amend and the Amendment before the documents were filed and lodged, respectively, with the Court.  Initialing documents is sufficient to satisfy the approval requirement in section 6751(b).  *See Graev*, 149 T.C. at 488 n.3.  Because this approval was obtained before the increased penalties were communicated to petitioner, section 6751(b) is satisfied.  *See Belair Woods*, 154 T.C. at 15.  Respondent has satisfied his burden of production with respect to section 6751(b).

---

obtained "before the assessment of the penalty or, if earlier, before the relevant supervisor loses discretion whether to approve the penalty assessment." *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1074 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020); *see also Kraske v. Commissioner*, 161 T.C. 104 (2023).  Because petitioner resided in Bermuda at the time he filed his Petition, this case is appealable to the U.S. Court of Appeals for the D.C. Circuit. *See* § 7482(b)(1) (flush language).  That court has not issued any ruling on the issue of the timing of written supervisory approval of penalties under section 6751(b).  The Court will, therefore, apply its own precedent on this issue. *Aldridge v. Commissioner*, T.C. Memo. 2024-24, at \*26 n.12.  The Court notes, however, that under any applicable standard, respondent's burden is satisfied with respect to each penalty determination.

**[\*23]** C.    *Reasonableness Defense*

In his briefs petitioner does not assert that he had reasonable cause for the tax positions he took for the years in issue. *See* § 6664(c). Rather, he alludes to his tax preparation software being partially responsible for any mistakes he made in the number entry process. This does not constitute reasonable cause. *See Bunney v. Commissioner*, 114 T.C. 259, 266–67 (2000); *Morales v. Commissioner*, T.C. Memo. 2012-341, at \*6 ("[T]he misuse of tax preparation software, even if unintentional or accidental, is no defense to penalties under section 6662."), *aff'd*, 633 F. App'x 884 (9th Cir. 2015). We accordingly sustain the section 6662(a) penalties determined in the Notice of Deficiency as well as those asserted in the Amendment to Answer on the basis of underpayments attributable to substantial understatements of income tax.

V.    *Conclusion*

We sustain respondent's determination that petitioner must include in his gross income $17,501 of the settlement proceeds received from the Town of Bolton in 2007 but agree with petitioner that the remaining $17,500 may be excluded from gross income. We further sustain respondent's determinations with respect to petitioner's entitlement to the deductions in issue and his liability for accuracy-related penalties under section 6662(a).

We have considered the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*